486 So.2d 124 (1986)
Elaine Chauvin, Wife of/and Lloyd A. PIZZALOTO
v.
The HOOVER COMPANY and/or American Mutual Liability Insurance Company.
No. 85-CA-656.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1986.
Writ Denied May 12, 1986.
*125 Patrick D. Breeden, New Orleans, for plaintiffs and appellants/appellees.
Thomas M. Richard, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendants and appellees/cross-appellants.
Before KLIEBERT, BOWES and GAUDIN, JJ.
BOWES, Judge.
This litigation involves an attempt by the plaintiffs to obtain personal injury and property damages as a result of the alleged failure of a Hoover repairman to replace the dust collection bag in a vacuum cleaner after it was serviced. Elaine and Lloyd Pizzaloto brought suit against the Hoover Company and its insurer, American Mutual Liability Insurance Company, alleging three causes of action: (1) tort; (2) violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (LSA R.S. 51:1401, et seq); and (3) breach of express or implied warranty and/or contract. The petition prayed for $25,000.00 in damages on each of the three causes of action for a total of $75,000.00.
The case came on for trial on May 13, 1985. Prior to hearing the merits, the trial judge rendered judgment on a previously heard motion for summary judgment dismissing plaintiff's claim under R.S. 51:1401 et seq.; both parties agreed to waive their rights to a jury trial, and plaintiffs reduced their demands to $9,999.00.
*126 A majority of plaintiffs' case consisted of the testimony of Mrs. Pizzaloto (approximately 69 pages of transcript). In her testimony, she testified that she brought the vacuum cleaner to Hoover for repair in early December 1982. The machine was picked up in working order on or about December 20, 1982, but was not used until January 3 or 4, 1983. Plaintiff assumed that the vacuum was returned to her with a bag installed, however, the repair ticket shows no charge for a dust collection bag. Mrs. Pizzaloto further testified that, after first using the vacuum in January 1983, she noticed the room "looked a little hazy" and that there was an accumulation of dust and lint around the vacuum cleaner's exhaust vents. Neither she nor her husband, who also testified to the same observations, checked the machine at that time.
The Hoover vacuum cleaner was next used by the Pizzalotos on or about January 10, 1983. Once again, plaintiffs made the same observations after the use of the machine that they had made after the January 3rd use. This time, Mrs. Pizzaloto took the machine into her laundry room where she examined it, discovering the missing dust collection bag. Mrs. Pizzaloto, an attorney, immediately had her husband take photographs of the offending machine.
Both plaintiffs testified that the reason they failed to check the vacuum after its first use in January 1983 was that they attributed the dust and lint around the exhaust vents to their new carpet giving off nap and static electricity. The record reveals that this carpet was installed in December of 1981, over one year earlier.
Testimony was offered by Elaine Pizzaloto that she has suffered from asthma since childhood; that the dust stirred up by the bagless vacuum cleaner precipitated attacks of severe respiratory distress which lasted through the month of March, necessitated her taking frequent doses of medication; and caused her to miss "several" days of work.
Although her husband confirmed her testimony, neither was able to produce any receipts for medication. Also, in the deposition (introduced in lieu of testimony) of Dr. T. Luke Yang, who prior to January 1983 had been treating Mrs. Pizzaloto's asthma with acupuncture and trigger point blocks, and who continued to do so afterwards, one finds the following facts. Elaine Pizzaloto visited Dr. Yang on December 16, 1982, complaining of severe symptoms of asthma. She did not return for further treatment until March 3, 1983, and her next visit was not until August 11, 1983. This is hardly the pattern of one suffering severe attacks of asthma. We note also that the dates of treatment do not tie-in with the use of the bagless vacuum machine. No other medical testimony was introduced.
Concerning physical damage to the house and contents as a result of the "dust cloud", Mrs. Pizzaloto stated:
Some of the things that I couldn't get the dust off, you could smell in there. I had tried tumbling them in the dryer. I had tried doing many things. I had brand new custom made draperies in my bedroom, and in my den area. I took those down and put them in because the last time I had a brand new pair of draperies cleaned they got ruined. And you can still, to some extent, you can smell, it is still there. It's hard to get out. I change theI keep a cover on my box spring and mattress. And I had to take that off because I was afraid it had penetrated into the box spring and mattress, and put plastic because I was afraid it had penetrated. I had a cloth one on there before, and I was deathly afraid. And every time I would go to bed at night, I would have problems because of some of the dust still there.
No matter how much vacuuming you tried to do to that box spring and mattress, you're not going to get it out. So, I replaced it with plastic covers. I had to throw out my pillow because I couldn't use it any more. Things such as this.
She estimated that she disposed of eight throw pillows at $8.00 a piece and two bed pillows at $37.00 each. No evidence was produced as to the cost of the mattress and *127 spring covers. The drapes plaintiffs valued at $400.00 per set, and which were allegedly ruined, were proven by the defense to still be hanging in the Pizzaloto home. By the wife's own testimony, she cleaned them at home by tumbling them in her clothesdryer.
The only other element of damage supported by testimony was the time necessary to clean the family home. At one point in her testimony, Elaine Pizzaloto claims she was able to clean her house in 10 to 12 hours; but when asked how long it took to reclean the home after the vacuum cleaner incident, she avers it took a month.
The trial judge, orally, in his reasons for judgment, stated:
... I find [...] that Hoover was negligent in not saying about the bag, taking it out and not replacing it, etcetera, the damages in my opinion, considering everything, we are lumping everything together because there is some question here, [...] about what was proven. Normally, we need receipts. Normally, we need specific points to show that this was done, or that was done. And this cost that, or that cost that. I find the total damages are $4,000.00.
We come down to the fact that this takes place certainly well under the comparative negligence statute. I think Mrs. Pizzaloto contributed to her own problem.
[...]
So, I'm going to say that certainly Hoover was negligent. I find that all things considered Mrs. Pizzaloto was likewise negligent. I really think that she was as much negligent as they are because she, as I say, had these chances to bail out of her problem. She also knew, or should have known certain things. She is not unintelligent about these matters.
I am going to rule that she was fifty percent negligent.
On appeal, plaintiffs complain only of the trial judge's granting of defendants' partial motion for summary judgment, dismissing plaintiffs' claim under the Unfair Trade Practices and Consumer Protection Law (R.S. 51:1401 et seq.), listing eleven alleged assignments of error in that decision.
R.S. 51:1409 states in part:
A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.
R.S. 51:1405 states in pertinent part:
§ 1405. Unlawful acts or practices; interpretation and rule making authority
A. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
In Dufau v. Creole Engineering, Inc., 465 So.2d 752 (La.App. 5 Cir.1985, Writ Denied 468 So.2d 1207 (La.1985), a panel of this court, addressing the burden of proof a plaintiff must sustain in order to recover under the act, stated:
The definition of unfair trade practices is left up to the courts. In Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153 (La. App. 2nd Cir.1981) the court stated:
"[A] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."
Therefore, this court finds that in order for Creole to recover under the Louisiana Unfair Trade Practices Act, Creole must prove some element of fraud, misrepresentation, deception, or other unethical conduct on the part of Dufau.
We hold that a consumer bears a like burden of proof in order to recover against a merchant under the consumer protection side of the act. Mere negligence by a merchant is not enough to sustain a cause of action under R.S. 15:1409. The *128 Pizzalotos were not told there was a new dust bag in the vacuum cleaner, nor did they pay for a new dust bag. They merely made an erroenous assumption. It would have taken little time and effort to verify if their assumption was correct.
Plaintiffs' petition and affidavit, no matter how they are couched, place nothing more at issue than the negligence of the defendant, Hoover. They presented no genuine issue of material fact in connection with the consumer protection claim.
Additionally, plaintiffs' claim under the consumer protection act was not merely a "theory of the case," as appellant claims in brief. Rather, this claim represents a separate cause of action, praying for separate relief. The granting of movers' motion for summary judgment denied the relief claimed by plaintiffs both in whole (as to this cause of action) and in part (as to the case as a whole). See Dryades Sav. and Loan Ass'n. v. Lassiter, 400 So.2d 894 (La. 1981). Thus, we find plaintiffs-appellants' assignments of error without merit.
Cross Appeal of Hoover and American Mutual
Defendants, Hoover and American Mutual, cross-appealed submitting the following as assignments of error:
A. The trial court erred in finding that Pizzaloto's damages were $4,000.00;
B. The trial court erred in finding that failure to replace the vacuum cleaner bag after the vacuum cleaner was repaired was a cause of all of the damages complained of; and
C. The trial judge erred in finding that Elaine Chauvin's negligence only contributed one-half to the damages complained of.
Assignments of error "B" and "C" involve factual determinations of the trier of fact and, as such, must be reviewed by this court, applying the "manifest error" standard enunciated by the Louisiana Supreme Court in Canter v. Koehring, 283 So.2d 716 (La.1973).
It is uncontroverted that the lack of a dust collection bag in the vacuum cleaner when it was used caused the damages sustained by the plaintiffs. Hoover, as manufacturer and repairer of the machine, knew that the installation of a bag before use was necessary to the proper operation of the machine. Likewise, the asthmatic plaintiff knew that a fresh bag in the vacuum was necessary for its optimum performance. It would have required little effort on the part of Hoover to replace the bag, even if it was necessary to charge the customer for this service. Similarly, little effort would have been required of Mrs. Pizzaloto to check to make sure a fresh bag was in the appliance, a practice she admitted doing more frequently than necessary because of her allergic condition.
For those reasons, we find the conclusion of the trial judge that each party was 50% negligent in causing plaintiffs' damages a reasonable factual basis for the trial judge's findings and, as such, this portion of his judgment will not be disturbed.
However, we must agree with Hoover that the $4,000.00 damages awarded to the plaintiffs by the trial court are not supported by the evidence. We are cognizant that under the standard of reviewing damage awards stated by our Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979) and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), a trial judge is given much discretion in assessing damages and the amount awarded should not be disturbed upon review absent "abuse of discretion."
Our review of the record reveals no facts on which the amount awarded could be based. Plaintiffs introduced no medical bills; although Mrs. Pizzaloto testified that she suffered severely after using the vacuum in January. She also testified that she did not visit her doctor between December 16, 1982 and March 3, 1983. No bills were introduced to substantiate any physical damage to the house or its contents; and, finally, plaintiffs testified that no one *129 was hired to clean or help them clean the alleged "dust storm" damage.
The only evidence of damage presented to the trial court was the self-serving testimony of the plaintiffs. That testimony establishes plaintiffs disposed of pillows totaling $138.00 in value; that it took Mrs. Pizzaloto approximately one month, after work at nights and on weekends, to clean her house after the incident, and that Mrs. Pizzaloto suffered asthma attacks which caused her to miss "several days" of work over a period of approximately two months. We consider thirty hours per week the maximum she could have spent cleaning and we recognize the minimum wage, which for lack of better evidence we use as the compensation rate for a person to clean a house, to be $3.35 per hour.
Using the aforementioned figures, we calculate the highest amount of damages reasonably within the discretion of the trial court to be the following:

 Replacement of dust-ruined pillows $138.00
 Cleaning of house (30 hours per week
 times four weeks times $3.35 per
 hour) 402.00
 Pain and Suffering 1,000.00
 ---------
 Total $1,540.00

Accordingly, we find that the trial court's award of $4,000 under the above facts and lack of evidence clearly constitutes manifest error.
Therefore, although we affirm the trial court's finding of 50% liability on the part of the plaintiffs, we amend the $4,000.00 in total damages and the $2,000.00 actually awarded to the plaintiffs in damages by the trial court to $1,540.00 in total damages and enter judgment in favor of plaintiffs Elaine Chauvin, wife of and Lloyd A. Pizzaloto and against defendants for fifty per cent of this amount, or the net sum of $770.00. Each side is to bear its own costs of this appeal.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.